```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/09/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

AMY INGBER et al.,

                Plaintiffs,

     -v-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION et al.,

                Defendants.

------------------------------------------------------------------------X

14 Civ. 3942 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

This case, filed only six days ago, is brought by seven New York City public school teachers against the New York City Department of Education (the "DOE"), and its Chancellor, Carmen Farina. The seven Plaintiffs allege that they have been deprived of their rights to due process in connection with disciplinary proceedings brought against them by Defendants. Now pending is a motion by Plaintiff Richard Sanjamino, filed on the afternoon of Friday, June 6, 2014, seeking a temporary restraining order and preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, halting a disciplinary hearing set to resume at 10 a.m. today. (Docket No. 6). For the reasons discussed below, Plaintiff's motion is DENIED.

## BACKGROUND

Sanjamino taught at John Adams High School from the fall of 1984 until June 2013, during which time he received tenure. (Aff. Supp. (Docket No. 6, Ex. 1) ("Sanjamino Aff.") ¶¶ 1, 3, 15). In June 2013, Sanjamino was notified that the recently appointed principal at his school, Daniel Scanlon, had initiated (or, in the language of New York State law, "preferred") charges against him alleging, among other things, inefficient service, neglect of duty, and

unwillingness or inability to follow procedures and carry out normal duties during the course of the school year.  (*Id.* ¶ 13; *id.*, Ex. H).  Shortly after being notified of the charges, Sanjamino was stripped of his teaching post and transferred to an administrative office, where he was asked to perform "menial" tasks.  (*Id.* ¶ 15; *id.*, Ex. K).  Sanjamino was also prohibited from (1) having direct contact with students (*id.* ¶ 16); (2) leaving the administrative office except to use the bathroom or eat lunch (*id.* ¶ 17; *id.*, Ex. L); or (3) participating or organizing per-session activities, after-school activities, summer school activities, graduation or award ceremonies, and coaching programs organized by the DOE (*id.* ¶¶ 20-21).

On July 20, 2013, Sanjamino, representing himself, filed a motion to dismiss the charges, arguing that the Hearing Officer lacked jurisdiction because the DOE had failed to comply with Section 3020-a(2)(a) of the New York Education Law, which requires a meeting and majority vote by an "executive session" of the employing board of the school district to determine whether probable cause exists to support charges brought against a tenured teacher.  (Reply Aff. Supp. (Docket No. 8) ("Sanjamino Reply Aff.") ¶¶ 3-4 & Exs. A-B).  Defendants do not dispute that such a meeting and majority vote never took place — nor could they, as the DOE has not had an employing board for several years.  Instead, Defendants rely on Section 2590-h, which delegated the responsibilities of the employing board to the Chancellor, and permits the Chancellor, in turn, to delegate any of her powers and duties to superintendents and principals.

The parties appeared before the Hearing Officer assigned to the case, Stephen O'Beirne, on October 8, 2013, at which time Sanjamino reiterated his objections.  (*Id.*, Ex. O).  Hearing Officer O'Beirne denied Plaintiff's motion on the ground that the question of procedural and substantive arbitrability is one for courts in the first instance.  (*Id.* at 8:8-23).  Accordingly, on December 18, 2013, Sanjamino, again representing himself, filed a lawsuit in the United States

District Court for the Eastern District of New York, contending that the failure to comply with Section 3020-a violated his equal protection rights and seeking, among other relief, an injunction against the disciplinary proceedings. (Reply Aff. Supp. (Docket No. 8) ("Sanjamino Reply Aff.") ¶ 7 & Ex. C). In February 2014, however, Plaintiff voluntarily dismissed the action. (*Id.* ¶ 8 & Ex. D). He claims he was "[t]hwarted by the complexity of the judicial process." (*Id.* ¶ 8).

Sanjamino was notified by e-mail a few weeks later that his disciplinary hearing would begin on March 18, 2014. (*Id.* ¶ 9 & Ex. E). In response, he requested a short adjournment and indicated that he was consulting an attorney regarding the "improper determination of probable cause." (*Id.* ¶ 10 & Ex. E). The hearing eventually began on March 26, 2014. (*Id.* ¶ 11). A few days later, however, before the disciplinary proceedings had completed or Sanjamino himself had a chance to testify, Sanjamino suffered two small strokes that required his hospitalization for several days. (Sanjamino Aff. ¶ 30). Sanjamino returned to work on May 19, 2014, and on June 2, 2014, he was informed that the hearing against him would resume on Monday, June 9, 2014. (*Id.* ¶ 32). Sanjamino requested an adjournment of the hearing so that he could pursue the instant action, but the Hearing Officer denied his request. (*Id.* ¶ 33). On June 3, 2014, Sanjamino filed the instant action; on the afternoon of June 6, 2014, he filed this motion. (Docket Nos. 1, 6).

Sanjamino argues that his federal constitutional due process rights were violated because Defendants' actions violated the procedures set out in Section 3020-a. (Mem. Law Supp. Pls.' Appl. TRO and Prelim. Inj. (Docket No. 6-21) ("Pl.'s Mem.") 8-14). By contrast, Defendants argue that the various delegations of power permitted Scanlon to take the actions he did, notwithstanding the undisputed lack of an "executive session" or a majority vote. (Decl. Jay Y. Kim Opp'n Pl.'s Req. Prelim. Inj. (Docket No. 7) ("Kim Decl.") ¶¶ 27-30). Defendants also argue that Sanjamino is not entitled to the relief he requests because he has failed to show that he

will suffer irreparable harm if the hearing proceeds, that he is likely to succeed on the merits, and that the balance of hardships are in his favor. (Kim Decl. ¶ 17).

## DISCUSSION

A temporary restraining order ("TRO"), like a preliminary injunction, "is an extraordinary remedy never awarded as of right." *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010). In order to be entitled to such relief, Plaintiff must show three things: (1) that he will suffer irreparable harm without the TRO or injunction; (2) that he is likely to succeed on the merits; and (3) that the balance of hardships tips in his favor. *See, e.g.*, *Jayaraj v. Scappini*, 66 F.3d 36, 38 (2d Cir. 1995); *see also, e.g.*, *Time Warner Cable v. Bloomberg*, 118 F.3d 917, 923 (2d Cir. 1997). To constitute "irreparable harm," the harm alleged must be of the sort that money damages cannot adequately compensate. *Jayaraj*, 66 F.3d at 39. Further, district courts must consider a plaintiff's delay in seeking relief when analyzing whether the plaintiff will suffer irreparable harm in the absence of relief. *See, e.g.*, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995).

Applying those standards here, the Court concludes that Plaintiff has not carried his burden of proving either that he will suffer irreparable harm or that he is likely to succeed on the merits. With respect to the former, Plaintiff relies heavily on *Schoolcraft v. City of New York*, 955 F. Supp. 2d 192 (S.D.N.Y. 2013), to argue that he faces two forms of irreparable harm: first, he may be required to testify at the disciplinary hearing without the procedural protections and benefits of the Federal Rules of Evidence and Civil Procedure; and second, any judgment issued as a result of the Section 3020-a hearing may collaterally estop him from making certain claims in the instant action, or indeed from prosecuting it altogether. (Pl.'s Mem. 16-18).

4

*Schoolcraft*, however, is distinguishable from the instant case.  There, the federal action had been pending for several years and had proceeded past the motion-to-dismiss stage before the plaintiff sought injunctive relief against the state disciplinary proceeding.  By contrast, Plaintiff here did not even file the instant complaint until six days before the hearing was scheduled to resume, months after the hearing originally began.  (Docket No. 1).[1]  Plaintiff claims that he could not seek relief earlier because he could not proceed until June 2, 2014, when he was advised that the hearing would resume this morning.  (Reply Mem. Law Further Supp. Pls.' Appl. TRO and Prelim. Inj. (Docket No. 8, Ex. 12) ("Pl.'s Reply Mem.") 2-5).  But that claim is belied by the fact that Plaintiff sought the very relief he seeks here in his first federal lawsuit, filed almost six months ago, and by the fact the he knew the hearing would resume at some point.  Plaintiff's failure to seek relief until the very eve of the hearing date fatally undermines any claim of irreparable harm.  *See Tom Doherty Assocs.*, 60 F.3d at 39.[2]

To some extent, Plaintiff also appears to rely on the dignitary harms that he would suffer from the disciplinary proceedings to which he is subject.  (Pl.'s Mem. 19).  Whether or not those could qualify as irreparable harms for purposes of a TRO or preliminary injunctive relief, however, they are a product of the pending charges, not the hearing itself — as Plaintiff himself admits.  (Sanjamino Aff. ¶ 19 ("As a result of the *preferment of charges,* I have been ostracized."

---

[1] Plaintiff's reliance on *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322 (S.D.N.Y. 2011), is also unavailing, as the plaintiff in that case, too, had filed a federal complaint long before seeking injunctive relief, and the eventual application's untimeliness was excused by a number of factors related to the prosecution of that lawsuit itself.  *Id.* at 333-34.

[2] Separate and apart from Plaintiff's delay, the Court is skeptical of Plaintiff's claims of irreparable harm.  The gravamen of the instant lawsuit is that Defendants violated Plaintiff's *procedural* due process rights in failing to comply with Section 3020-a.  It is hard to understand how Plaintiff's testimony at the hearing, presumably about the underlying facts, would compromise any claim he might have on that score.  And insofar as the Hearing Officer declined to address Plaintiff's constitutional claim, it is hard to understand what significance the collateral estoppel effect of the hearing (if any) would have on the instant case.

(emphasis added))).  Thus, they have already occurred and would not be prevented by the granting of temporary injunctive relief — in fact, the hearing itself could allow Plaintiff to clear his name.  In short, even taken together, Plaintiff has failed to demonstrate that he will suffer any injury as a result of the disciplinary proceeding that this Court could not remedy in the event he is successful — including ordering him reinstated with back pay and other restitutionary relief, if appropriate.  As a result, the Court concludes that Plaintiff has failed to meet his burden of showing that he will be irreparably harmed absent a TRO or preliminary injunction.

That is sufficient by itself to deny Plaintiff's motion, but there is another basis to deny it as well: the abstention doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971).  Although the Supreme Court has repeatedly cautioned that a federal court's "obligation" to hear and decide a case over which it has jurisdiction is "virtually unflagging," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), *Younger* recognized a limited exception to that general rule.  Specifically, under *Younger*, federal courts may "refrain from hearing cases that would interfere with a pending state criminal proceeding or with certain types of state civil proceedings."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citation omitted).  The doctrine expresses "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  At bottom, it "is grounded in interrelated principles of comity and federalism.  Both considerations require federal courts to be 'cognizant that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'"  *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citation omitted) (quoting *Younger*, 401 U.S. at 44); *accord Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

The Second Circuit has held that *Younger* abstention is "mandatory" when three conditions are met: "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351 F.3d at 75. As the Supreme Court recently held, however, *Younger* abstention does not extend to "all parallel state and federal proceedings" that meet those three conditions, even "where a party could identify a plausibly important state interest." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 593 (2013). Instead, the *Younger* doctrine applies only to three classes of parallel proceedings: (1) "pending state criminal proceeding[s]"; (2) "particular state civil proceedings that are akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 184 S. Ct. at 588; *see id.* at 591 ("We have not applied *Younger* outside these three 'exceptional' categories, and today hold . . . that they define *Younger*'s scope."). *See generally In re Standard & Poor's Rating Agency Litigation*, — F. Supp. 2d —, 2014 WL 2481906, at *22 (S.D.N.Y. June 3, 2014)

Those requirements appear to be met here. First, there is obviously a pending state proceeding — namely, the disciplinary hearing that Plaintiff seeks to enjoin — and it is of a type to which *Younger* applies. *See, e.g.*, *Mason v. Departmental Disciplinary Comm.*, 894 F.2d 512, 515 (2d Cir. 1990) (applying *Younger* to a state bar disciplinary proceeding); *McCune v. Frank*, 521 F.2d 1152, 1158 (2d Cir. 1975) (applying *Younger* to a county police department's disciplinary proceeding). Second, Plaintiff does not, and could not, dispute that important state interests are implicated in those proceedings — including, for example, the interest in effectively and swiftly disciplining public school teachers for misconduct and the interest in promoting professionalism among teachers. *See Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 105-06

(2d Cir. 1997) (emphasizing that, in analyzing whether important state interests are implicated, a court must "'not look narrowly to [the State's] interest in the *outcome* of the particular case,' but rather look to 'the importance of the generic proceedings to the State'" (alteration in original) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365 (1989)). Finally, the state proceedings would appear to afford Plaintiff an adequate opportunity for judicial review of his federal constitutional claims, if not in the hearing itself then in judicial review of the Hearing Officer's determinations.  *See Mason*, 894 F.2d at 515.

Plaintiff does not seriously dispute that the three requirements for *Younger* abstention are met here.  Instead, he notes that courts in this Circuit have concluded that *Younger* is no bar to claims challenging the legality of the very proceeding in which he will be forced to raise his constitutional defenses.  (Pl.'s Reply Mem. 19-21).  But such claims require an assertion of *bias*, *see McCune*, 521 F.2d at 1158 — specifically, that the state proceedings were the result of subjective bad faith on the part of the prosecutor or decisionmaker.  *See Shlagler v. Phillips*, 166 F.3d 439, 443 (2d Cir. 1999) (requiring abstention absent allegations of impermissible retaliation or other attempts to deter otherwise constitutional protected behavior); *accord Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994) (concluding that "[a]bstention . . . serve[s] no purpose" under circumstances of bad faith because "a state cannot have a legitimate interest in discouraging the exercise of constitutional rights").  Here, although Plaintiff alleges that Scanlon (1) "disliked" him (Sanjamino Aff. ¶ 10); (2) gave him negative evaluations and wrote emails seeking to discipline him in various ways (*id.* ¶¶ 12-14); (3) chastised him for "incidental contact" with colleagues in the hallway (*id.* ¶ 18); and (4) ultimately preferred the charges at issue, he has not alleged that Scanlon sought to discipline him in retaliation for constitutionally protected conduct — or indeed, as response to anything other than dissatisfaction with Plaintiff's

job performance. In fact, he explicitly alleges that Scanlon disliked him "for unknown reasons" — an implicit concession that he cannot show the requisite bad faith. (Sanjamino Aff. ¶ 10).

Given those facts, and the fact that Plaintiff does not impugn the neutrality of either the Hearing Officer or the as-yet-unassigned state judge who might review the Hearing Officer's determinations (in the event that Hearing Officer rules against Plaintiff — which is itself speculative), Plaintiff does not appear to have established any basis to lift the *Younger* bar. It follows that the Court is unlikely to reach the merits — at least so long as the state proceedings continue — and, *a fortiori*, that Plaintiff has not established a likelihood of success on the merits.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED. The Clerk of Court is directed to terminate Docket Number 6.

SO ORDERED.

Date: June 9, 2014
New York, New York

_____
JESSE M. FURMAN
United States District Judge